# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

RON ALLEN FERNANDEZ,

       Petitioner,

-vs-                                          Case No.  8:16-cv-2565-T-36SPF

SECRETARY, DEPARTMENT
OF CORRECTIONS,

       Respondent.

_____/

## ORDER

Petitioner, a Florida prisoner, initiated this action by filing a petition for a writ of habeas corpus pursuant to 28 U.S.C. Section 2254 (Doc. 1).  He subsequently filed an amended petition (Doc. 2).   The Court ordered Respondent to show cause why the relief sought in the amended petition should not be granted  (Doc. 7).   Respondent filed a limited response in opposition, incorporating therein a motion to dismiss the petition as untimely (Doc. 9), to which Petitioner replied (Doc. 13).   The motion to dismiss was denied (*see* Doc. 16), and Respondent filed a supplemental response (Doc. 21).  Upon consideration, the amended petition will be denied.

## PROCEDURAL BACKGROUND

Petitioner was found guilty of theft and aggravated battery (Doc. 9-1, p. 3).[1]  He was sentenced to 15 years in prison on the aggravated battery conviction, and 5 years on the theft conviction, consecutive to the aggravated battery (*Id*., pp. 4-12).  His convictions and sentences were affirmed on appeal (*Id*., pp. 15-16).

---

[1]Petitioner had two trials, the first ending in a mistrial after a witness testified that Petitioner had told her that he was going back to prison (*see* Doc. 22-2, docket pp. 326-34).

Petitioner's motion for post-conviction relief was denied (Doc. 22-4, docket pp. 231-350), and the denial of the motion was affirmed on appeal (Doc. 9-1, p. 68, 70). He thereafter initiated this action by filing a petition for a writ of habeas corpus (Doc. 1). His amended petition (Doc. 2) is now before the Court.

## DISCUSSION

The amended petition raises five grounds for relief:

Ground One:     MS. AMBER TUCKER RENDERED INEFFECTIVE ASSISTANCE OF COUNSEL FOR FAILING TO PROTECT MR. FERNANDEZ'S RIGHT TO A SPEEDY TRIAL BY WAIVING THE RIGHT AGAINST MR. FERNANDEZ'S ORAL MOTION FOR SPEEDY TRIAL

Ground Two:     MS. JENNIFER STROUF RENDERED INEFFECTIVE ASSISTANCE OF COUNSEL WHEN SHE WITHDREW HER REQUEST FOR MISTRIAL DURING THE TESTIMONY OF STATE WITNESS JACQUELINE BEILER

Ground Three:   MS. JENNIFER STROUF RENDERED INEFFECTIVE ASSISTANCE OF COUNSEL WHEN SHE FAILED TO OBJECT TO THE SURPRISE TESTIMONY OF STATE WITNESS BILLY HAMM AS A DISCOVERY BRADY V. MARYLAND VIOLATION

Ground Four:    MS. JENNIFER STROUF RENDERED INEFFECTIVE ASSISTANCE OF COUNSEL WHEN SHE FAILED TO PREPARE AND ADVISE MR. FERNANDEZ ON THE CORRECT NUMBER OF PRIOR CONVICTIONS THAT COULD BE USED TO IMPEACH HIS TESTIMONY

Ground Five:    MS. JENNIFER STROUF AND MS. MELISSA WILSON RENDERED INEFFECTIVE ASSISTANCE OF COUNSEL FOR FAILING TO MOVE FOR JUDGMENT OF ACQUITTAL RELATIVE TO THE LESSER INCLUDED OFFENSE OF GRAND THEFT

## I. GOVERNING LEGAL PRINCIPLES

This case is governed by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). *Penry v. Johnson*, 532 U.S. 782, 792 (2001); *Henderson v. Campbell*, 353 F.3d 880, 889-90 (11th Cir. 2003). The AEDPA "establishes a more deferential

standard of review of state habeas judgments," *Fugate v. Head*, 261 F.3d 1206, 1215 (11th Cir. 2001), in order to "prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002); *see also Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (recognizing that the federal habeas court's evaluation of state-court rulings is highly deferential and that state-court decisions must be given the benefit of the doubt).

## A. Standard of Review Under the AEDPA

Pursuant to the AEDPA, habeas relief may not be granted with respect to a claim adjudicated on the merits in state court unless the adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The phrase "clearly established Federal law," encompasses only the holdings of the United States Supreme Court "as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000).

"[S]ection 2254(d)(1) provides two separate bases for reviewing state court decisions; the 'contrary to' and 'unreasonable application' clauses articulate independent considerations a federal court must consider." *Maharaj v. Secretary for Dep't. of Corr.*, 432 F.3d 1292, 1308 (11th Cir. 2005). The meaning of the clauses was discussed by the Eleventh Circuit Court of Appeals in *Parker v. Head*, 244 F.3d 831, 835 (11th Cir. 2001):

> Under the "contrary to" clause, a federal court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the United States Supreme Court] on a question of law or if the state court decides a case differently than [the United

States Supreme Court] has on a set of materially indistinguishable facts. Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the United States Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case.

If the federal court concludes that the state court applied federal law incorrectly, habeas relief is appropriate only if that application was "objectively unreasonable." *Id.*

Finally, under § 2254(d)(2), a federal court may grant a writ of habeas corpus if the state court's decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." A determination of a factual issue made by a state court, however, shall be presumed correct, and the habeas petitioner shall have the burden of rebutting the presumption of correctness by clear and convincing evidence. *See Parker*, 244 F.3d at 835-36; 28 U.S.C. § 2254(e)(1).

## B. Standard for Ineffective Assistance of Counsel

The United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984), established a two-part test for determining whether a convicted person is entitled to relief on the ground that his counsel rendered ineffective assistance: (1) whether counsel's performance was deficient and "fell below an objective standard of reasonableness"; and (2) whether the deficient performance prejudiced the defense.[2] *Id.* at 687-88. A court must adhere to a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Id.* at 689-90. "Thus, a court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's

---

[2]In *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993), the United States Supreme Court clarified that the prejudice prong of the test does not focus solely on mere outcome determination; rather, to establish prejudice, a criminal defendant must show that counsel's deficient representation rendered the result of the trial fundamentally unfair or unreliable.

conduct." *Id.* at 690; *Gates v. Zant*, 863 F.2d 1492, 1497 (11th Cir. 1989).

As observed by the Eleventh Circuit Court of Appeals, the test for ineffective assistance of counsel:

> has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial. Courts also should at the start presume effectiveness and should always avoid second guessing with the benefit of hindsight. *Strickland* encourages reviewing courts to allow lawyers broad discretion to represent their clients by pursuing their own strategy. We are not interested in grading lawyers' performances; we are interested in whether the adversarial process at trial, in fact, worked adequately.

*White v. Singletary*, 972 F.2d 1218, 1220-21 (11th Cir. 1992) (citation omitted). Under those rules and presumptions, "the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." *Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994).

## C. Exhaustion of State Remedies and Procedural Default

Before a district court can grant habeas relief to a state prisoner under § 2254, the petitioner must exhaust all state court remedies that are available for challenging his conviction, either on direct appeal or in a state post-conviction motion. *See* § 2254(b)(1)(A); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999) ("[T]he state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition."). A state prisoner "'must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process,' including review by the state's court of last resort, even if review in that court is discretionary." *Pruitt v. Jones*, 348 F.3d 1355, 1358-59 (11th Cir. 2003) (quoting *O'Sullivan*, 526 U.S. at 845.)

To exhaust a claim, a petitioner must make the state court aware of both the legal and factual

bases for his claim. *See Snowden v. Singletary*, 135 F.3d 732, 735 (11th Cir. 1998) ("Exhaustion of state remedies requires that the state prisoner 'fairly presen[t] federal claims to the state courts in order to give the State the opportunity to pass on and correct alleged violations of its' prisoners federal rights.'") (quoting *Duncan v. Henry*, 513 U.S. 364, 365 (1995)). A federal habeas petitioner "shall not be deemed to have exhausted the remedies available in the courts of the State. . .if he has the right under the law of the State to raise, by any available procedure, the question presented." *Pruitt*, 348 F.3d at 1358. The prohibition against raising an unexhausted claim in federal court extends to both the broad legal theory of relief and the specific factual contention that supports relief. *Kelley v. Sec'y, Dep't of Corr.*, 377 F.3d 1317, 1344 (11th Cir. 2004).

The requirement of exhausting state remedies as a prerequisite to federal review is satisfied if the petitioner "fairly presents" his claim in each appropriate state court and alerts that court to the federal nature of the claim. 28 U.S.C. § 2254(b)(1); *Picard v. Connor*, 404 U.S. 270, 275-76 (1971). A petitioner may raise a federal claim in state court "by citing in conjunction with the claim the federal source of law on which he relies or a case deciding such claim on federal grounds, or simply by labeling the claim 'federal.'" *Baldwin v. Reese*, 541 U.S. 27, 32 (2004).

The doctrine of procedural default provides that "[i]f the petitioner has failed to exhaust state remedies that are no longer available, that failure is a procedural default which will bar federal habeas relief, unless either the cause and prejudice or the fundamental miscarriage of justice exception is established." *Smith v. Jones*, 256 F.3d 1135, 1138 (11th Cir. 2001). To establish cause for a procedural default, a petitioner "must demonstrate that some objective factor external to the defense impeded the effort to raise the claim properly in state court." *Wright v. Hopper*, 169 F. 3d 695, 703 (11th Cir. 1999). *See also Murray v. Carrier*, 477 U.S. 478 (1986). To show prejudice,

a petitioner must demonstrate not only that the errors at his trial created the possibility of prejudice but that they worked to his actual and substantial disadvantage and infected the entire trial with error of constitutional dimensions. *United States v. Frady*, 456 U.S. 152 (1982). The petitioner must show at least a reasonable probability of a different outcome. *Crawford v. Head*, 311 F.3d 1288, 1327-28 (11th Cir. 2002).

Alternatively, a petitioner may obtain federal habeas review of a procedurally defaulted claim if review is necessary to correct a fundamental miscarriage of justice. *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000); *Carrier,* 477 U.S. at 495-96. A fundamental miscarriage of justice occurs in an extraordinary case where a constitutional violation has probably resulted in the conviction of someone who is actually innocent. *Schlup v. Delo*, 513 U.S. 298, 327 (1995). "'[A]ctual innocence' means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623 (1998). To meet this standard, a petitioner must show a reasonable likelihood of acquittal absent the constitutional error. *Schlup*, 513 U.S. at 327.

## II. ANALYSIS

### A. Ground One

Petitioner contends that Attorney Tucker was ineffective in waiving Petitioner's right to speedy trial against his expressed wishes.[3] He alleges that he did not agree with Attorney Tucker when on January 14, 2009, she moved for a continuance of his trial scheduled for January 20, 2009. He argues that he was prejudiced by the continuance because it allowed the State to collect DNA evidence from him, which was used against him at trial. He states that in light of the DNA evidence

---

[3]Attorney Amber L. Tucker filed Petitioner's first two motions for continuances (Doc. 22-2, docket pp. 53, 57). During Petitioner's trials, he was represented by Attorneys Jennifer H. Strouf and Melissa Wilson (Doc. 22-2, docket pp. 229, 341).

and "late witnesses," he was "forced" into pursing a "risky" theory of self-defense and testifying at trial. He contends that had Attorney Tucker not waived speedy trial, there is a reasonable probability that the outcome of his trial would have been different.

This claim was raised in Ground One of Petitioner's Amended Second Motion for Postconviction Relief (Doc. 22-4, docket pp. 102–04). After an evidentiary hearing (*see id.*, docket pp. 145-225), the state post-conviction court denied the claim as follows:

> Defendant alleges ineffective assistance of counsel due to trial counsel's failure to protect Defendant's right to speedy trial. Defendant alleges he was arrested on July 26, 2008, and Fla. R. Crim. P. 3.191(a) provides every person charged with a felony shall be brought to trial within 175 days of arrest. Defendant explains his speedy trial period expired on January 17, 2009, and with the recapture period until February 1, 2009. Defendant alleges his trial was scheduled for January 20, 2009, but at a pretrial conference on January 14, 2009, his counsel moved for a continuance and in her motion stated she had consulted with Defendant who has no objection and understands speedy trial is waived on granting the motion. Defendant alleges he did not agree to waive speedy trial and orally moved for speedy trial which counsel did not adopt. Defendant alleges the continuance harmed his defense because it allowed the State more time to prepare and allowed the State time to move to compel blood and saliva samples from the Defendant for comparison to evidence from the crime scene. Defendant explains an analysis of the evidence from the crime scene resulted in a DNA match of the Defendant to a tank top found at the scene and to the victim's socks. Defendant alleges that needlessly continuing the trial bolstered the State's case through DNA evidence and forced Defendant into a risky self-defense argument, required Defendant to admit to the offense and testify at trial.

> In his Amended Second Motion, Defendant alleges the waiver of speedy trial was not consensual and not a reasonable trial strategy. Defendant alleges absent counsel's performance there is a reasonable probability the outcome of the trial would have been different.

> At the January 9, 2015 evidentiary hearing, Amber Tucker, Defendant's former counsel testified. Counsel testified she began her representation of Defendant in November of 2008. (Evid. Hrg. Transc. p. 13). Counsel testified she met with Defendant on January 12, 2009, and explained how speedy trial worked. (Evid. Hrg. Transc. p. 14). Counsel explained she requested a continuance because her level of preparation on January 14, 2009 was only in the beginning stages. (Evid. Hrg. Transc. p. 15). Counsel admitted Defendant was not in agreement with having his case continued and waiving his speedy trial rights. (Evid. Hrg. Transc. p. 18).

On cross examination, counsel testified that in December, 2008 she requested depositions of witnesses named in the police reports, but the first date she was able to schedule to take depositions was not until January, 23, 2009; three days after Defendant's case was set for trial. (Evid. Hrg. Transc. p. 20). Counsel explained she did not feel she would be effective going to trial before taking depositions, as they are an invaluable resource in preparation for trial because witnesses may have heard statements that were not included in the police report. (Evid. Hrg. Transc. p. 21). Counsel testified she filed a second motion to continue on February 11, 2009, and Defendant had no objection to the continuance at that time. (Evid. Hrg. Transc. pp. 21 22).

Defendant testified at the evidentiary hearing. Defendant testified that maintaining his speedy trial right was a large concern for him because he had a good relationship with some of the witnesses and he felt that could change suddenly. (Evid. Hrg. Transc. pp. 68-69). He testified that Ms. Tucker advised him she was moving to continue his trial, and that he did not agree with her decision because it would waive his speedy trial right. (Evid. Hrg. Transc. pp. 69-70).

Defendant testified once his speedy trial right was waived, he no longer had any objection to continuing his case, because the State then had an opportunity to collect DNA evidence. (Evid. Hrg. Transc. pp. 71-72).

After reviewing Defendant's allegations, the testimony taken at the January 9, 2015 evidentiary hearing, the court file, and the record, the Court finds counsel's testimony at the evidentiary hearing to be more credible. The Court finds counsel's decision to continue Defendant's case in order to depose witnesses was a reasonable trial strategy. The Court notes that counsel may waive a defendant's right to speedy trial even against the defendant's wishes. *See State v. Kruger*, 615 So. 2d 757 (Fla. 4th DCA 1993). The Court additionally finds that Defendant's claim that the continuances bolstered the State's case through DNA evidence is without merit, as DNA results were not available until March 31, 2009, and Defendant did not object to his case being continued on February 11, 2009. (Evid. Hrg. Transc. pp. 75-77). Consequently, the Court finds counsel's performance was not deficient and no relief is warranted on claim one.

(*Id.*, docket pp. 233-35).

The state post-conviction court's denial of this claim did not result in a decision that involved an unreasonable application of *Strickland*, or was based on an unreasonable determination of the facts. Attorney Tucker was not deficient in moving for a continuance without Petitioner's consent because "scheduling issues are the province of counsel." *Fayson v. Sec'y, Fla. Dep't of Corr.*, 568

F. App'x 771, 774 (11th Cir. 2014). "An attorney, acting without consent from his client, may waive his client's right to a speedy trial because '[s]cheduling matters are plainly among those [decisions] for which agreement by counsel generally controls.'" *Id.*, 568 F. App'x at 773 (quoting *New York v. Hill*, 528 U.S. 110, 115 (2000) (alterations in original)).

Attorney Tucker's decision to move for a continuance was not objectively unreasonable. She began her representation of Petitioner in November 2008, and requested depositions of witnesses in December 2008. However, she was unable to schedule the first deposition until January 23, 2009, three days after the scheduled date for trial (Doc. 22-4, docket p. 164). And additional depositions were scheduled for April 3, 2009 (*Id.*, docket p. 166). Attorney Tucker believed that depositions were "an invaluable tool or resource in preparation for trial[,]" and she would not have been effective if she went to trial without taking the depositions (*Id.*, docket pp. 164-65). In light of these circumstances, Attorney Tucker made a reasonable strategic decision to move for a continuance and waive speedy trial. *See Fayson*, 568 F. App'x at 774 (counsel's decision to move for continuance and waive speedy trial was not objectively unreasonable "because counsel still had 23 depositions to conduct 5 days before trial, including 2 of the state's key witnesses."); *Strickland*, 466 U.S. at 690 (1984) ("strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable").

Even if Attorney Tucker's decision to request a continuance amounted to deficient performance, Petitioner has failed to demonstrate prejudice. There was ample evidence, other than the DNA evidence and Petitioner's own testimony,[4] tying Petitioner to the battery of the victim and

---

[4]Petitioner appears to contend that once the State obtained the DNA evidence, he was forced to testify and present a theory of self-defense. Petitioner testified that he obtained the victim's money, watch, and necklace in exchange for cocaine (Doc. 22-3, docket pp. 444-47). He further testified that he had to physically defend himself by fighting the victim after the victim grabbed him and attempted to pull him into a car (*Id.*, docket pp. 449-54).

theft of the victim's property. The victim identified Petitioner as the man who approached him and with whom he had a confrontation before he awoke in the hospital (Doc. 22-3, docket pp. 35-38). At the time of the confrontation, the victim was wearing a gold necklace and watch, and had cash in his wallet (*Id*., docket pp. 33, 37). Witnesses testified that after the time of the offense, they saw Petitioner with blood on his arms, pants, shoes, and shirt, and the money he possessed had blood on it (*Id*., docket pp. 138- 41, 161-62, 204). Witnesses also testified that Petitioner had told them that he was in trouble because someone saw him dragging a body down the road, and that he had hurt someone badly and tried to carry him (*Id*., docket pp. 149-50, 167). During a telephone conversation between Petitioner and a witness while Petitioner was in jail, Petitioner admitted to an altercation, but claimed it was self-defense (*Id*., docket p. 171). Petitioner told another witness that he beat up the victim because he wanted the victim's money and chain (*Id*., docket p. 276). Another witness was told by Petitioner that he had taken the victim's watch and wallet (*Id*., docket p. 218). That witness gave the watch to a detective (*Id*., docket p. 259). That watch, and the gold necklace Petitioner had been wearing, belonged to the victim (*Id*., docket p. 329, 333). In light of this evidence, Petitioner has failed to demonstrate a reasonable probability that, but for defense counsel waiving speedy trial, the result of the trial would have been different.

The state courts' denial of this claim was not an unreasonable application of *Strickland*, nor was it based on an unreasonable determination of the facts. Accordingly, Ground One does not warrant federal habeas relief.

**B. Ground Two**

Petitioner contends that Attorney Strouf was ineffective in withdrawing the motion for mistrial she made after witness Jacqueline Beiler testified that Petitioner told her that he got jumped

earlier in the night and got into another fight later that night. He alleges that Beiler's testimony violated a motion in limine prohibiting the State from introducing evidence that Petitioner had been in another fight earlier on the same night that the offense for which he was being tried had occurred. He opines that the testimony was prejudicial to him and denied him a fair trial because it "characterized him [as] a violent person and damaged his ability to argue self-defense." (Doc. 2, p. 9). He argues that had Attorney Strouf not withdrawn the motion for mistrial, it would have been granted.

This claim was raised in state court as Ground Two of Petitioner's Amended Second Motion for Postconviction Relief (Doc. 22-4, pp. 104-05). In denying the claim, the state post-conviction court stated:

> Defendant alleges ineffective assistance of counsel due to trial counsel withdrawing her request for mistrial. Defendant alleges defense's motion in limine was granted prior to trial prohibiting the State from introducing evidence that Defendant had been involved in another fight on the night of the offense. Defendant alleges State witness Jacqueline Beiler testified that Defendant told her he got jumped earlier in the night and got in another fight. Defendant alleges counsel then requested a mistrial and that the prosecutor agreed the witness had been instructed to follow the motion in limine. Defendant alleges counsel then withdrew the motion for mistrial stating she conferred with the Defendant and that Defendant does not want to declare a mistrial, and requested if the witness was instructed to go no further she believed it would not be error requiring a mistrial. Defendant alleges counsel never asked him for his input on this matter or the strategy. Defendant alleges the testimony that he was in a fight earlier in the night characterized him a violent person and damaged his ability to argue self-defense.

> In his Amended Second Motion, Defendant alleges counsel should have stuck with the motion for mistrial. Defendant alleges counsel's error prejudiced him and that absent counsel's error there is a reasonable probability the outcome of the trial would have been granted [sic].

> The Court previously found claim two facially sufficient and ordered the State to respond. In Response, the State argues the record refutes Defendant's allegation. The State explains the Court asked counsel to confer with her client and counsel stated twice she conferred with her client regarding the request for mistrial.

The State argues Defendant did not indicate to the Court that counsel did not confer with [sic] concerning the request for mistrial. The State further argues the motion for mistrial would not have been granted because the Court found that the statement did not violate the motion in limine.

A review of the record reflects, that on direct examination State witness Jacqueline Beiler was asked by the State "and what was it that the defendant told you about why he was covered in blood?" to which Beiler responded: "he said that he had got jumped earlier that night, but then he had also stated that he got in another fight later on in the night and that he had basically got the chain that night." Tr. Transc. p. 327. Counsel objected and requested a mistrial arguing that Beiler's testimony was excluded by a pretrial motion in limine. Tr. Transc. p. 327. Counsel requested to confer with the Defendant and twice informed the court she had conferred with the Defendant. Tr. Transc. p. 328-29. Counsel informed the court that after conferring with the Defendant and co-counsel, although the defense believed Beiler's testimony was subject of the pretrial motion in limine, that:

> At this point in time, the defendant does not wish to have this declared a mistrial, although we've explained that, on [sic], I asked for that at the bench, and two, I think we could ask for the [sic] that as the testimony thus far was simply that he was jumped earlier in the night and it was not a matter of a fight or something that he stated.
> If the witness is instructed to go no further and does not discuss anything else about being jumped or a fight or that witness' testimony does not somehow convert into a fight, we believe this will not be an error that is such that require [sic] a mistrial.
> However, of course, that is predicated upon it going no further. We've also discussed it and thought about it and any curative instruction I could possibly ask for I think would only highlight the situation and highlight that there were, in fact, two possible incidents that evening.
> So at this time, I withdraw my request for a mistrial, but that is of course, predicated upon the witness being instructed to go no further....

Tr. Transc. pp. 329-30. The Court went on and noted that Defendant's April 6th motion in limine concerned "allegations, any and all, of uncharged conduct including, but not limited to, an unrelated fight which is alleged to have occurred on or about July 25th, 2008 between defendant and individuals who are appearing at trial." Tr. Transc. pp. 331. The Court concluded the testimony presented by witness Beiler was not about a fight but that Defendant had been jumped earlier in the evening. Tr. Transc. pp. 331.

After reviewing Defendant's Motion, the State's Response, the court file, and

the record, the Court finds contrary to Defendant's allegation the record reflects counsel did confer with the Defendant concerning withdrawing the request for a mistrial and counsel gave a detailed explanation to the court as to the Defendant's decision to withdraw the request for a mistrial. *See* Tr. Transc. pp. 328-30. Additionally, the record reflects the Court concluded witness Beiler's testimony did not violate the motion in limine because the testimony was not about a fight but that Defendant had been jumped. *See* Tr. Transc. p. 331. Consequently, the Court finds the record conclusively refutes Defendant's allegations in claim two. Further, the Court finds Defendant cannot demonstrate prejudice given the Court's conclusion that Beiler's testimony was not about a fight but about Defendant being jumped and thus the testimony was not yet in violation of the motion in limine. *See* Tr. Transc. p. 327; 331. **As such, no relief is warranted on claim two.**

(Doc. 22-4, pp. 122-24) (emphasis in original).

The state post-conviction court concluded that defense counsel was not deficient in withdrawing the motion for mistrial, and there was no prejudice to Petitioner, because the trial court found that Beiler's testimony did not violate the motion in limine, and therefore the motion for mistrial would have been denied had it not been withdrawn. Whether a motion would have succeeded under Florida's standard for granting a mistrial is a question of state law. This Court must defer to the state court's interpretation of state law. *See Will v. Sec'y, Dep't of Corr.*, 278 Fed.Appx. 902, 908 (11th Cir. 2008) ("Although an ineffective-assistance-of-counsel claim is a federal constitutional claim, which we consider in light of the clearly established rules of *Strickland*, when 'the validity of the claim that [counsel] failed to assert is clearly a question of state law, ... we must defer to the state's construction of its own law.'") (quoting *Alvord v. Wainwright*, 725 F.2d 1282, 1291 (11th Cir. 1984)); *Callahan v. Campbell*, 427 F.3d 897, 932 (11th Cir. 2005) ("[T]he Alabama Court of Criminal Appeals has already answered the question of what would have happened had [counsel] objected to the introduction of Callahan's statements ... Therefore, [counsel] was not ineffective for failing to make that objection."); *Herring v. Sec'y, Dep't of Corr.*, 397 F.3d 1338, 1354-55 (11th Cir. 2005) ("The Florida Supreme Court already has told us how the issues

would have been resolved under Florida state law had [petitioner's counsel] done what [petitioner] argues he should have done ... It is a 'fundamental principle that state courts are the final arbiters of state law, and federal habeas courts should not second-guess them on such matters.'") (quoting *Agan v. Vaughn*, 119 F.3d 1538, 1549 (11th Cir. 1997)).

The record supports the state post-conviction court's factual finding that the trial court found that Beiler's testimony did not violate the motion in limine. The motion in limine requested, in pertinent part, instruction from the court prohibiting the State from commenting on a *fight* involving Petitioner that occurred earlier on the same day as the offense for which Petitioner was on trial, and that was unrelated to the offense (Doc. 22, docket pp. 108-09). The purpose of the request was to prevent any comment on Petitioner's "character, other crimes, wrongs, or acts. . . ." (*Id.*, docket p. 108). The motion in limine was granted (*Id.*, docket p. 125).

During direct examination of Beiler, the prosecutor asked "And what was it that the defendant told you about why he was covered in blood?" (Doc. 22-3, docket p. 142, lines 7-8). Beiler answered "[h]e said that he had got jumped earlier that night, but then he had also stated that he got in another fight later on in the night and that he had basically got the chain that night." (*Id.*, lines 9-12). Defense counsel approached the bench and moved for a mistrial, arguing that Beiler's testimony violated the motion in limine prohibiting any comment on a fight involving Petitioner earlier in the night (*Id.*, lines 14-21). However, after consulting with both co-counsel and Petitioner, defense counsel withdrew the motion for mistrial on the condition that the court instruct Beiler "to not go further and. . .not discuss anything else about being jumped or a fight or that witness's testimony does not somehow convert into a fight. . . ." (*Id.*, docket pp. 144-45).

The trial court reviewed the motion in limine and determined that it requested no comment

on "allegations. . .of uncharged conduct including, but not limited to, an unrelated fight which is alleged to have occurred on or about July 25th, 2008 between defendant and individuals who are not appearing at trial." (*Id*., docket p. 146, lines 7-11). The trial court concluded that the motion in limine had not been violated because Beiler's testimony was "not about a fight, but that [Petitioner] had been jumped earlier." (*Id*., lines 14-15).

Because the trial court determined that Beiler's testimony did not violate the motion in limine, the state post-conviction court's decision was not based on an unreasonable determination of the facts. And the decision was not an unreasonable application of *Strickland*, since defense counsel was not deficient for withdrawing a motion for mistrial that would have been denied. Accordingly, Ground Two warrants no relief.

## C. Ground Three

Petitioner contends that Attorney Strouf was ineffective in failing to object to State witness Billy Hamm's "surprise" testimony that Petitioner had asked him to lie at trial on the ground that the testimony amounted to a *Brady* violation.[5] Petitioner alleges that near the conclusion of Hamm's direct testimony, the prosecutor informed the judge and Attorney Strouf that Hamm was going to testify that Petitioner had asked him to lie at trial. Although Attorney Strouf moved to exclude the testimony based on its content, she did not argue that it should be excluded as a "*Brady*/discovery violation." Petitioner argues that Attorney Strouf should have moved to exclude the testimony based on the "timeliness of production."

Petitioner further contends that Attorney Strouf was deficient in failing to request a continuance "to further investigate or to discover impeachment evidence[,]" and in failing to cross-

---

[5]*See Brady v. Maryland*, 373 U.S. 83 (1963) (government must disclose all exculpatory information in its possession to the defendant).

examine Hamm regarding this testimony. He asserts that the testimony prejudiced him because it "completely undermined" his credibility.

These three sub-claims were raised in state court in Ground Two of Petitioner's Amended Second Motion for Postconviction Relief (Doc. 22-4, pp. 105-07). In denying Ground Two, the state post-conviction court stated:

> Defendant alleges ineffective assistance of counsel due to trial counsel's failure to respond to the surprise testimony of State witness Billy Hamm. Defendant alleges near the end of Hamm's direct testimony the prosecutor informed the Court and defense counsel that Hamm was going to testify that Defendant asked him to lie at trial. Defendant alleges the prosecutor told the Court that Hamm and Defendant rode to court from the jail together, discussed the case on the bus ride, and Defendant told Hamm to lie. Defendant alleges after Hamm testified that Defendant asked him to lie, counsel failed to cross examine Hamm on this allegation. Defendant asserts that trial counsel's error materially contributed to his conviction that absent the error
> there is a reasonable probability the result of the proceeding would have been different.

> At the January 9, 2015 evidentiary hearing Defendant's former trial counsel Jennifer Strouf testified. Counsel testified she represented Defendant in two trials, the first of which was a mistrial. (Evid. Hrg. Transc. p. 25). Counsel testified that at the second trial, toward the end of the State's direct examination of Billy Hamm, the prosecutor asked to approach the bench and informed defense counsel that the State planned to elicit testimony from Hamm based on a conversation he had with Defendant on the bus ride from the jail to the courthouse that morning. (Evid. Hrg. Transc. pp. 30-31). Counsel testified she then proffered Hamm to the Court, and used the one hour lunch break in trial to discuss with her co-counsel and Defendant about how to proceed. (Evid. Hrg. Transc. p. 32). Counsel explained her strategy for dealing with Hamm's damaging testimony:

>> "Here was the problem I had. I had to make a choice. I could either choose to argue with Mr. Hamm, assuming the conversation happened and try to minimize it...or I could choose to somewhat ignore the statement and call Mr. Hamm a liar. If I chose to cross examine him to the extent I did with the proffer, I was essentially owning that the conversation happened."

> (Evid. Hrg. Transc. p. 38). Counsel testified she was concerned that if she questioned Billy Hamm about his conversation with Defendant on the bus ride from

jail, she ran the risk of corroborating Hamm's testimony and alerting the jury that Defendant was in custody. (Evid. Hrg. Transc. p. 33). Counsel admitted she purposely did not ask a specific question on cross examination about the conversation, and instead chose to mention it in only in closing argument. (Evid. Hrg. Transc. p. 35). Counsel testified she cross examined Hamm on his bias against Defendant, and his prior convictions for crimes of dishonesty in lieu of directly addressing the veracity of the bus conversation. (Evid. Hrg. Transc. p. 37).

The Court notes "strategic decisions do not constitute ineffective assistance of counsel if alternative courses have been considered and rejected and counsel's decision was reasonable under the norms of professional conduct." *Occhicone v. State*, 768 So. 2d 1037, 1048 (Fla. 2000). The defendant carries the burden of overcoming the presumption that a decision might be considered sound trial strategy. *Strickland*, 466 U.S. at 689; *see also Asay v. State*, 769 So. 2d 974, 984 (Fla. 2000). "Counsel's strategic decisions will not be second-guessed on collateral attack." *Johnson v. State*, 769 So.2d 990, 1001 (Fla. 2000).

After reviewing Defendant's allegations, the testimony taken at the January 9, 2015 evidentiary hearing, the court file, and the record, the Court finds counsel made a reasonable decision in trial strategy by choosing to attack Billy Hamm's testimony in closing argument rather than specifically addressing it on cross examination. **Consequently, the Court finds counsel's performance was not deficient and no relief is warranted on claim three.**

(*Id.*, docket pp. 235-37) (emphasis in original).

With respect to Ground Three of the instant petition, Respondent first argues that Petitioner failed to exhaust his state court remedies with regard to his sub-claims that Attorney Strouf was ineffective in failing to (1) move to exclude Hamm's testimony as a *Brady*/discovery violation, and (2) move for a continuance to further investigate the matter, since he did not raise these claims on appeal from the denial of his amended second Rule 3.850 motion (*see* Doc. 21, pp. 15-16). The Court agrees.

Before a district court can grant habeas relief to a state prisoner under § 2254, the petitioner must exhaust all state court remedies that are available for challenging his conviction, either on direct appeal or in a state post-conviction motion. See § 2254(b)(1)(A); *O'Sullivan*, 526 U.S. at 842.

To exhaust state remedies a state prisoner "'must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process,' including review by the state's court of last resort, even if review in that court is discretionary." *Pruitt*, 348 F.3d at 1358-59 (quoting *O'Sullivan*, 526 U.S. at 845). *See also Leonard v. Wainwright*, 601 F.2d 807, 808 (5th Cir. 1979) (stating that exhaustion of a claim raised in a Rule 3.850 motion includes an appeal from the denial of the motion). Petitioner did not raise these two sub-claims on appeal from the denial of his amended second Rule 3.850 motion (*see* Doc. 22-4, docket pp. 539-41). His failure to raise these sub-claims in his Initial Brief resulted in the abandonment of the claims. *See Ward v. State*, 19 So. 3d 1060, 1061 (Fla. 5th DCA 2009) (en banc).

The sub-claims are now procedurally defaulted because any future attempt to exhaust these claims in state court would be futile under Florida's procedural default doctrine, since the state rule requiring submission of an appellate brief bars Petitioner from returning to state court to challenge the denial of this claim in a second appeal of the denial of the Rule 3.850 motion, *see* Fla. R. App. P. 9.141(b)(3)(C), and any further attempt to raise the claim in another Rule 3.850 motion would be subject to dismissal as untimely and successive. *See* Fla. R. Crim. P. 3.850(b), (h). And Petitioner has failed to show either cause and prejudice for the default, or that a fundamental miscarriage of justice will result if these sub-claims are not addressed on the merits. Therefore, he is not entitled to federal review of these two sub-claims.

Petitioner, however, did assert on appeal that counsel was ineffective in failing to cross-examine Hamm on his testimony that Petitioner had asked him to lie at trial (*see* Doc. 22-4, docket pp. 539-41). He therefore exhausted his state remedies with respect to this claim. Accordingly, the claim will be addressed on the merits.

The claim fails on the merits. First, it is vague and conclusory. Petitioner alleges that Attorney Strouf failed to cross-examine Hamm regarding his testimony that Petitioner asked him to lie at trial, but fails to assert the specific questions Attorney Strouf failed to ask, and the information that was omitted as a result of the failure to cross-examine Hamm on this issue. "Mere allegations of inadequate performance during cross-examination are conclusory and do not permit the Court to examine whether counsel's failure prejudiced him." *Reid v. Jones*, 2018 WL 2437647, at *7 (S.D. Fla. Apr. 23, 2018), *report and recommendation adopted*, 2018 WL 2435169 (S.D. Fla. May 30, 2018) (citations omitted).

Second, the state post-conviction court's determination that Attorney Strouf's decision not to cross-examine Hamm on this testimony was reasonable trial strategy was not an unreasonable application of *Strickland*, nor was it based on an unreasonable determination of the facts in light of the evidence presented during the state proceedings. During Hamm's trial testimony, the prosecutor asked to approach the bench (Doc. 22-3, docket p. 220, lines 3-4). At the bench conference, the prosecutor stated that Hamm was going to testify that while he and Petitioner were riding from jail to the trial, Petitioner told him to lie (*Id.*, lines 10-13). Attorney Strouf requested a recess and to proffer the witness (*Id.*, lines 17-21). She also moved to exclude the testimony on the grounds that it was overly prejudicial because it would reveal that Petitioner was transported from jail that morning, and irrelevant because it did not amount to a confession (*Id.*, docket pp. 223-24). The court decided that the testimony was relevant and would be admitted if the witness did not reveal that the conversation took place while he and Petitioner were in custody (*Id.*, docket p. 231, lines 15-20).

During the subsequent proffer of testimony, Hamm testified that while he and Petitioner were

riding on the bus from the jail to the courthouse, Petitioner "asked me to lie for him." (*Id.*, docket p. 233, lines 4-20). He further testified that noone else was present during the conversation (*Id.*, docket p. 234, lines 14-17). During cross-examination, he testified that there were 40 other prisoners on the bus, and two officers (*Id.*, docket pp. 234-35). He clarified that Petitioner did not use the word "lie," but rather asked him to testify that Petitioner's girlfriend Chelsey Harris "was lying on him" because Petitioner was "messing with [Hamm's] girlfriend" (*id.*, docket p. 239, lines 2-4), and that Harris "would do anything to put him in prison" because Petitioner "had left her" (*Id.*, docket p. 242, lines 12-14).

When trial resumed, Hamm testified that earlier in the day he had a conversation with Petitioner during which Petitioner asked him to lie and told him specific things he should say (*Id.*, docket p. 261, lines 16-22; docket p. 262, lines 2-4). During cross-examination, Attorney Strouf did not ask Hamm about the alleged conversation he had with Petitioner earlier that day (*Id.*, docket pp. 263-70). Rather, she asked Hamm about the deterioration of his friendship with Petitioner, his omission of important facts when he first spoke to law enforcement, and his prior felonies and crimes of dishonesty (*Id.*, docket pp. 263-65). During closing argument, Attorney Strouf attacked Hamm's credibility by emphasizing that he "showed up in orange," had "three felony convictions and three crimes of dishonesty," was no longer friends with Petitioner after "they had a fight over women," and never said anything to law enforcement about what Petitioner allegedly told him until more than a year after the offense (Doc. 22-3, docket p. 556, lines 2-25; docket p. 557, lines 1-9). She further argued that Hamm's testimony that Petitioner asked him to "lie" was "suspect" and unsupported by any other evidence (*Id.*, docket p. 556, lines 22-25; docket p. 557, lines 1-3).

During the post-conviction evidentiary hearing, Attorney Strouf testified that she believed

her options were either to cross-examine Hamm regarding his testimony that Petitioner had asked him to falsely testify, or "ignore the conversation and call Billy Hamm a liar." (Doc. 22-4, docket p. 200, lines 3-6). She was concerned that if she cross-examined Hamm regarding the alleged conversation with Petitioner, the jury may hear that Petitioner was still in jail nearly two years after the offense, and Hamm could come across as believable, which could damage Petitioner's defense (*Id*., docket p. 276, lines 4-19). Therefore, she decided to not cross-examine Hamm on the alleged conversation, and instead to question him regarding his prior criminal history, bias against Petitioner, and delay in giving his statement to police, then argue his lack of credibility during closing argument (*Id*., docket p. 276, lines 22-25; docket p. 277, lines 1-6; docket p. 278, 3-12).

Attorney Strouf's decision to not cross-examine Hamm on his testimony that Petitioner had asked him to lie at trial, and the manner of her cross-examination, were strategic decisions entitled to deference. *Dorsey v. Chapman*, 262 F.3d 1181 (11th Cir. 2001), *cert. denied*, 535 U.S. 1000 (2002). The only question is whether Attorney Strouf's strategic decision was "reasonable." *See Minton v. Sec'y, Dep't of Corr.*, 271 Fed.Appx. 916, 918 (11th Cir. 2008) ("The Supreme Court has 'declined to articulate specific guidelines for appropriate attorney conduct and instead has emphasized that the proper measure of attorney performance remains simply reasonableness under prevailing professional norms.' ") (quoting *Wiggins v. Smith*, 539 U.S. 510, 521 (2003)).

Her decision was reasonable. She had concerns that if she cross-examined Hamm on this testimony, he may come across as credible, which could corroborate his story that Petitioner asked him to lie. She believed the better approach was to cross-examine Hamm on his damaged relationship with Petitioner, his criminal history that included multiple felonies and crimes of dishonesty, and the long delay in giving his statement to police, then emphasize Hamm's overall

lack of credibility during closing argument. Moreover, she was concerned that cross-examining Hamm regarding his alleged conversation with Petitioner on the morning of the trial could result in the jury learning that Petitioner was still detained more than two years after the offense, which could undermine Petitioner's credibility and presumption of innocence. *Cf. Estelle v. Williams*, 425 U.S. 501, 503–05 (1976) (appearance in prison clothing seriously compromises a defendant's right to the presumption of innocence).

Petitioner has failed to demonstrate that no reasonable attorney would have done as Attorney Strouf did with regard to Hamm's testimony that Petitioner had asked him to lie at trial. *Harvey v. Warden, Union Corr. Inst.*, 629 F.3d 1228, 1239 (11th Cir. 2011) (to show deficient performance, "trial counsel's error must be so egregious that no reasonably competent attorney would have acted similarly."). Accordingly, Petitioner fails to meet his burden of proving that the state court unreasonably applied *Strickland* or unreasonably determined the facts by rejecting this ground. 28 U.S.C. § 2254(d)(1), (2). Ground Three therefore warrants no relief.

**D. Ground Four**

Petitioner contends that Attorney Strouf was ineffective in failing to advise him on the correct number of prior felony convictions that could be used to impeach him. He alleges that although the State indicated it was prepared to impeach him with three prior felony convictions, he told Attorney Strouf that he believed he had only one prior felony conviction. He complains that Attorney Strouf's failure to investigate "the true number of prior offenses" left him no choice but to admit to having three prior felonies, to avoid the jury learning the nature of any of his prior felony offenses. Subsequently, during sentencing, the State admitted that it could only prove one prior felony conviction. Petitioner argues that because he admitted to having three prior felony offenses

rather than only one, both his credibility and self-defense theory were tainted.

This claim was raised in Ground Four of Petitioner's Amended Second Motion for Postconviction Relief (Doc. 22-4, docket pp. 107-08). In denying the claim, the state postconviction court stated:

> Defendant alleges counsel was ineffective for failing to advise Defendant on the correct number of prior felony convictions that could be used to impeach Defendant. Defendant alleges the State claimed Defendant had been convicted of three felonies and Defendant believed he only had one. Defendant alleges despite being aware of this dispute prior to trial, counsel did not conduct any investigation into the true number of priors. Defendant alleges he testified at trial and admitted to three prior felonies but at sentencing the State admitted it could only prove one prior felony. Defendant alleges this shows counsel's lack of preparation in Defendant's case. Defendant alleges admitting to three felonies hurt his defense of self-defense and his credibility.

> In his Second Amended Motion, Defendant alleges there is a reasonable probability he would not have been convicted absent counsel's error. Defendant alleges the number of convictions matters to the jury especially in a self-defense case based on credibility of the witnesses.

> At the January 9, 2015 evidentiary hearing, Defendant's former trial counsel Jennifer Strouf testified the State was prepared to impeach Defendant and say that he had three prior convictions if he testified at trial. (Evid. Hrg. Transc. p. 39). Counsel testified Defendant did not inform her he had been convicted of only one felony, and that she researched Defendant's prior offenses before trial by speaking to Defendant about his priors, using the clerk's system, the Hillsborough County jail website, the Department of Corrections website, and physically looking at what the State had. (Evid. Hrg. Transc, pp. 39-40). Counsel testified the defense only realized at sentencing that Defendant's violation of probation was erroneously given a new case number due to a clerical error. Id. The error caused Defendant's juvenile case to be given a felony case number. (Evid. Hrg. Transc. p. 58). Counsel testified that as a result of the error, she mistakenly believed that Defendant had been direct filed into felony court as a juvenile and sentenced as an adult. Id.

> Counsel brought the oddity to the Court's attention during trial and did not feel Defendant should have to admit to three prior convictions. (Evid. Hrg. Transc. p. 41). Counsel "absolutely believed" that based on her conversations with the Court, if Defendant did not admit to three prior convictions, the State would then bring out the nature of the offenses on cross examination. (Evid. Hrg. Transc. pp. 56-58). Counsel elected to stipulate to the number of Defendant's felony convictions

rather than risk the State impeaching Defendant with the nature of the convictions. (Evid. Hrg. Transc. p. 45).

Defendant testified he knew he had only one prior felony conviction and that he told his attorney. (Evid. Hrg. Transc. p. 72). He testified he was aware that as long as they stipulated to the number of prior felony convictions, the State would not be allowed to introduce the nature of the offenses. (Evid. Hrg. Transc. pp. 72-73).

The Court notes the record reflects the dispute of Defendant's priors was discussed by the Court, State, and defense counsel during trial prior to the Defendant deciding to testify. (*See* Tr. Transc. pp. 608-16). Additionally, the record reflects not until sentencing did the State inform the Court of the clerical error concerning Defendant's priors in case 02-CF-8732. (*See* July 30, 2010 Transc. pp. 7-11).

After reviewing Defendant's allegations, the testimony taken at the January 9, 2015 evidentiary hearing, the court file, and the record, the Court finds counsel's testimony more credible than Defendant's. The Court finds counsel reasonably believed Defendant had three prior felony convictions based on the representations by the State and her own research of Defendant's case. The Court finds counsel made a reasonable strategic decision in advising Defendant to concede the number of prior felony convictions the State claimed Defendant had, rather than risk impeachment on cross examination. Thus, the Court finds counsel's performance was not deficient, because even though the State was incorrect about the number of Defendant's prior felony convictions at trial, counsel correctly advised Defendant about the number of prior felony convictions the State was prepared to impeach Defendant with should he testify. **Consequently, no relief is warranted on claim four.**

(*Id.*, docket pp. 237-39) (emphasis in original).

The state post-conviction court found that Attorney Strouf "believed [Petitioner] had three prior felony convictions based on the representations by the State and her own research of [Petitioner's] case[,]" and made a strategic decision "to concede the number of prior felony convictions the State claimed [Petitioner] had, rather than risk impeachment on cross examination." These factual findings are supported by the record and are presumed correct, and Petitioner has not rebutted those findings with clear and convincing evidence to the contrary.

During the second trial, the State informed the court that "it's the state's position the defendant has two prior burglaries of a dwelling, one prior grand theft and two prior petty thefts. So it would be three felonies and two crimes of dishonesty. . . ." (Doc. 22-4, docket p. 608, lines 16-19). The State indicated that it had certified copies of these convictions (*Id.*, docket p. 609, lines 8-15; docket p. 612, lines 1-10). Attorney Strouf indicated that the defense agreed that there was one prior felony burglary conviction and two petty theft convictions, but did not believe there was a second burglary conviction and a grand theft conviction (*Id.*, docket p. 609, lines 2-5; docket p. 611, lines 20-25).

During the first trial, the same issue was discussed between Attorney Strouf, the State, and the court. There, the State indicated that there were two burglaries and one grand theft (Doc. 22-2, docket p. 302, lines 15-16). Attorney Strouf indicated that the defense believed that there was only one burglary and some petit thefts (*Id.*, lines 22-24). The State provided certified convictions to the court (*Id.*, docket pp. 302-04). Attorney Strouf indicated that the defense agreed with the burglary conviction in case number 02-6900 (*Id.*, docket p. 304, lines 12-13), but disagreed with the burglary and grand theft convictions in case number 02-8732 (*Id.*, docket p. 304, lines 16-19; docket p. 305, lines 1-11). When Attorney Strouf indicated that Petitioner was "adjudicated delinquent as a juvenile" in that case, the court stated that "[t]here's nothing juvenile about this one." (*Id.*, lines 6-11). The clerk indicated that the offenses in case number 02-8732 were "upgraded from a juvenile provision packet" and handled in felony court (*Id.*, docket p. 305, lines 24-25; docket p. 306, line 1). The court stated that if the State could get a [finger]print comparison, "you'll have another burglary and another grand theft." (*Id.*, docket p. 307, lines 2-12).

During the evidentiary hearing on Petitioner's post-conviction motion, Attorney Strouf

testified that the State was prepared to impeach Petitioner with three prior felony convictions (Doc. 22-4, docket p. 280, lines 10-13). She testified that Petitioner had been arrested in "a number different cases. . .over the years." (*Id.*, lines 21-22). She researched Petitioner's prior convictions by discussing the matter with Petitioner, searching the clerk's system, the Hillsborough County Jail website, and the Department of Corrections website, and looking at what the State had provided (*Id.*, docket p. 280, lines 24-25; docket p. 281, lines 1-16). Until sentencing, Attorney Strouf believed that the burglary and grand theft charges in case number 02-8732 were initiated in a juvenile petition, then subsequently "direct filed" in an adult felony case (*Id.*, docket p. 281, lines 22-25). The state court "allowed the juvenile case to go before the felony court judge and the clerk gave it a CF number which would normally indicate it is an adult felony number." (*Id.*, docket p. 282, lines 4-6). She did not see "anything that said. . .this is a juvenile case." (*Id.*, docket p. 285, lines 24-25). "In [all her] years of practice, [she] had never seen that particular error before. . . ." (*Id.*, docket p. 287, lines 24-25). She "had never seen a juvenile case number end up with a felony conviction number, for anyone who was not direct filed to adult court." (*Id.*, docket p. 299, lines 8-14). Based on her research, she "thought [the State] would be able to introduce the [three prior felonies] and [] thought there would be a problem [if Petitioner admitted to only one prior felony]." (*Id.*, docket p. 284, lines 19-21). Moreover, based on the conversations and the court's comments regarding the matter, she "absolutely believed" that the court was going to allow the State to impeach Petitioner with the nature of his prior offenses unless Petitioner testified that he had three prior felony convictions (*Id.*, docket p. 298, lines 1-7).

As the state post-conviction court determined, Attorney Strouf reasonably believed that the trial court would allow the State to impeach Petitioner if he testified that he had only one prior

felony conviction. In Florida, the proper method to impeach a witness who answers the question regarding his prior convictions incorrectly is to offer a certified record of the witness' prior convictions, which will necessarily reveal the nature of the crimes. *See Gavins v. State*, 587 So. 2d 487, 489-90 (Fla. 1st DCA 1991) (citations omitted). The State indicated that it had certified records of the prior convictions and a good faith basis to say that Petitioner had three prior felony convictions. During the first trial, the trial judge stated that case number 02-8732, in which Petitioner was convicted of both burglary and grand theft, was not a juvenile case, and that the State would "have another burglary and another grand theft." Attorney Strouf's own investigation revealed that case number 02-8732 was assigned as a felony case rather than a juvenile case, and she therefore believed that Petitioner had been tried as an adult. And after Attorney Strouf discussed the matter with Petitioner immediately before the trial colloquy regarding Petitioner's decision whether to testify, Attorney Strouf told the court that Petitioner "doesn't have a personal recollection of it, but he is willing to basically state on the stand the number the state has shown us today." (Doc. 22-4, docket p. 614, lines 14-16). Finally, the trial judge during the second trial gave no indication to the parties whether he was or wasn't going to allow the State to impeach Petitioner with three prior convictions if he testified that he only had one prior conviction (*See id.*, docket pp. 608-16).

In light of these circumstances, Attorney Strouf decided that the best strategy was to have Petitioner admit to three prior felony convictions rather than one to avoid the possibility that the court would allow the State to impeach Petitioner with three prior convictions, and risk the jury hearing that Petitioner had two previous convictions for burglary and one for grand theft (*See id.*, docket p. 286, lines 2-11). In light of her experience, Attorney Strouf believed that "it's much more damaging to hear the name of what the charge is" rather than the number of prior felonies (*Id.*,

28

docket p. 283, lines 1-5). And because Petitioner was charged with robbery, she was concerned that the prior burglary and theft convictions "kind of support[] a robbery charge." (*Id.*, lines 11-12).[6]

Petitioner has not attempted to argue that Attorney Strouf's strategy was unreasonable. And "[e]ven if in retrospect the strategy appears to have been wrong, the decision will be held ineffective only if it was so patently unreasonable that no competent attorney would have chosen it." *Adams v. Wainright*, 709 F.2d 1443, 1445 (11th Cir.1983). Under the circumstances, Attorney Strouf's decision to have Petitioner admit to three prior felony convictions to avoid the possibility of the jury learning the nature of his prior convictions was reasonable trial strategy that is virtually unassailable. *Strickland*, 466 U.S. at 690 ("Strategic choices made after a thorough investigation are virtually unassailable.").

Petitioner contends that Attorney Strouf was ineffective in failing to "perform any investigation" between the first and second trials, "despite the availability of investigators and support staff in the office of the Public Defender to look into the dispute." (Doc. 2, p. 13). His contention is vague, conclusory, and self-serving because he does not specify what further investigation could have been done, nor state what further investigation would have revealed. He therefore has not carried his burden of showing that Attorney Strouf's decision not to further investigate Petitioner's prior convictions between the first and second trials amounted to deficient performance. *Cf. Aldrich v. Wainright*, 777 F.2d 630, 636 (11th Cir.1985), *cert. denied*, 479 U.S. 918 (1986) (speculation insufficient to carry the burden of a habeas corpus petitioner as to what evidence could have been revealed by further investigation).

Attorney Strouf testified that "[l]ong before the trial, [she] had researched [Petitioner's]

---

[6]Although Petitioner was charged with robbery (Doc. 22-2, docket p. 104), he was found guilty of the lesser included crime of theft (*Id.*, docket p. 191).

priors." (Doc. 22-4, docket p. 280, lines 24-25). She did not further investigate the matter between the first and second trial because "[b]ased on what [she] had already looked at which was looking at the Banner file, looking at the Hillsborough County Jail records, looking at the conviction on the VOP, [she] did not believe there was something else that needed to be done to look at it differently." (*Id.*, docket p. 285, lines 12-16). Petitioner does not argue or show that Attorney Strouf's investigation before the first trial was inadequate. And "[s]trategic choices to forego further investigation into an issue are not deficient when a reasonable professional judgment based on a sufficient initial inquiry supports the decision to terminate the investigation." *Lynd v. Terry*, 470 F.3d 1308, 1316 (11th Cir. 2006) (citing *Strickland*, 466 U.S. at 690-91). Based on what was revealed from her investigation before the first trial, Attorney Strouf reasonably believed further investigation would not reveal new information.

Petitioner has failed to show that Attorney Strouf was deficient in failing to further investigate his prior convictions. Accordingly, he has failed to demonstrate that the state courts' denial of this claim was an unreasonable application of *Strickland*. Ground Four therefore does not warrant federal habeas relief.

## E. Ground Five

Petitioner contends that his trial attorneys were ineffective in failing to move for a judgment of acquittal on his grand theft conviction on the ground that the State failed to introduce sufficient evidence proving that the value of the stolen property exceeded $300.00. He argues that although the victim testified that the purchase price of his watch was $500.00, and the value of the necklace was $1,000.00, the testimony was legally insufficient because there was no evidence of the "market value" of the watch at the time of the offense, and the victim was not "competent to testify" as to

the value of the necklace because it belonged to the victim's father. He opines that had defense counsel moved for a judgment of acquittal, he would have been convicted of petit theft rather than grand theft.[7]

This claim is unexhausted because Petitioner did not raise it in his state post-conviction motion (*See* Doc. 22-4, docket pp. 101-12). Acknowledging the lack of exhaustion and resulting procedural default, Petitioner argues that he has established the cause and prejudice exception under *Martinez v. Ryan*, 566 U.S. 1 (2012) (*See* Doc. 2, pp. 16-17). Ineffective assistance of post-conviction counsel generally does not constitute cause to overcome a procedural default. *See Coleman v. Thompson,* 501 U.S. 722, 752–55 (1991). *Martinez* recognizes a narrow, equitable exception to this rule:

> Where, under state law, claims of ineffective assistance of trial counsel must be raised in an initial-review collateral proceeding, a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective.

*Martinez*, 566 U.S. at 17.

"To overcome the default, a prisoner must. . .demonstrate that the underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit." *Id*. at 14. *See also Duffy v. Sec'y, Dep't of Corr.*, 729 Fed. App'x. 669, 670 (11th Cir. 2018) ("A defaulted claim is substantial if the resolution of its merits would be debatable among jurists of reason.") (citing *Miller–El v. Cockrell*, 537 U.S. 322, 336 (2003)).

Petitioner's defaulted claim of ineffective assistance of trial counsel is not substantial. The

---

[7]In Florida, petit theft of the items taken from the victim in Petitioner's case is a second-degree misdemeanor which carries a maximum sentence of sixty days' imprisonment. *See* §§ 812.014(3)(a), 775.082(4)(b), Fla. Stat.

jury instruction on theft indicated that "'Value' means the market value of the property at the time and place of the offense, or if that value cannot be satisfactorily ascertained, the cost of replacement of the property within a reasonable time after the offense." (Doc. 22-2, docket p. 170). The victim testified that a few months before the offense, he bought the watch for over $500.00 (Doc. 22-3, docket p. 33, lines 7-8). He further testified that the value of the necklace at the time of the offense was "[r]oughly over a thousand dollars." (*Id.*, lines 15-17). Moreover, Petitioner testified that the value of the cocaine he gave to the victim in exchange for the watch and necklace was $1,400.00 (Doc. 22-3, docket p. 447). This evidence was sufficient to establish the value of the stolen property as more than $300.00 and overcome a motion for judgment of acquittal.

Petitioner argues that the victim "was not competent to testify as to the value of the [necklace]" because the necklace belonged to the victim's father rather than the victim himself (Doc. 2, p. 16). He does not, however, support his argument with any law indicating that the victim was not competent to testify as to the necklace's value solely because the victim's father owned the necklace. Under Florida law, "one's competency to testify as to the value of stolen property is not so much a question of whether he owns the stolen property as it is a question of his personal knowledge of the property. If the lay witness has personal knowledge of the property, he is competent to express an opinion as to the value of [the] property." *Taylor v. State*, 425 So. 2d 1191, 1193 (Fla. 1st DCA 1983) (citation omitted). The victim in Petitioner's case had "personal knowledge of the property" because the necklace had "been in [his] family for quite some time." (Doc. 22-2, docket p. 33, line 13). Consequently, the victim was competent to testify as to the value of the necklace, and his testimony regarding the value of the necklace alone established that the total value of the stolen property exceeded $300.00. *See Pickett v. State*, 839 So. 2d 860, 861 (Fla. 2d

DCA 2003) (for purposes of establishing theft, "[v]alue may be established by direct testimony of fair market value. . . .") (citation omitted).  Moreover, the value of the victim's property was established by Petitioner's testimony that he was willing to accept that property in exchange for cocaine that he valued at $1,400.00.  *See Toole v. State*, 270 So. 3d 371, 375 (Fla. 4th DCA 2019) ("'Fair market value' is defined as '[t]he price that a seller is willing to accept and a buyer is willing to pay on the open market and in an arm's-length transaction.'") (quoting Black's Law Dictionary 1785 (10th ed. 2014)).

Petitioner has not shown that a judgment of acquittal on his grand theft conviction would have been granted had trial counsel argued that there was insufficient evidence supporting the jury's determination that the value of the stolen property was greater than $300.00.  He therefore fails to demonstrate that his defaulted claim of ineffective assistance of trial counsel is substantial.  Consequently, he has not established cause and prejudice to overcome the procedural default.  Accordingly, Ground Five is denied.

Any of Petitioner's claims not addressed in the Order have been determined to be without merit.

It is therefore **ORDERED** that:

1. Petitioner's amended petition for a writ of habeas corpus (Doc. 2) is **DENIED**.

2. A certificate of appealability is **DENIED** in this case because Petitioner cannot make "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).  And because Petitioner is not entitled to a certificate of appealability, he is not entitled to proceed on appeal *in forma pauperis*.

3. The **Clerk** is directed to enter judgment against Petitioner and close this case.

**DONE and ORDERED** in Tampa, Florida, on August 22, 2019.

Charlene Edwards Honeywell
United States District Judge

Copies to: Petitioner *pro se*; Counsel of Record